Catron, J.
delivered the opinion of the Court. In this cause the facts are substantially these: Hartwell Miles, in 1815, was very dissipated and had wasted most of his property, and was tending to insolvency; Wm. Boyd *704 paid his debts and took his plantation in payment; some negroes were left; of one of these (now in controversy) he made a bill of sale to his daughter Nancy, then about fourteen years old; no consideration was given, and it was made avowedly in anticipation of future insolvency. In 1816 or 1817, Nancy married David Kegler, the plaintiff; the slave was taken into Kegler’s possession by virtue of the bill of sale, and continued so until 1822, when Nancy, the wife, died, leaving two children. Kegler then resided in Mississippi. Kegler, soon after the death of his wife, returned to the house of his father-in-law, Hartwell Miles, in Davidson County, Tennessee, with the negro girl and his two children; he [427] made a deed of gift of the girl to the children, which was duly acknowledged and registered in Davidson County. The bill of sale made by Hartwell Miles to his daughter in 1815 -was not registered until 1825, after the suit was brought. Soon after making the deed of gift, Kegler left Tennessee, leaving the negro girl and his children with Hartwell Miles. In 1828, Hart-well Miles took the negro to Rutherford County, and sold her to Peter N. Smith, and made a bill of sale for her, which was duly proven and recorded ; Smith paid a full price, and believed he was acquiring a good title; he loaned the slave to his br.other-in-law, Thomas Miles, who was sued in this action by Kegler’s children. The jury found for the plaintiffs upon the complicated matters of law and of fact, arising under the Statute of Frauds and Registry Acts. The Court charged the jury. A new trial was moved for and refused, and the whole evidence set out.
That Nancy Miles, before her intermarriage with Kegler, acquired no valid title as against a purchaser from Hartwell Miles, is a perplexed question of law and fact: that Kegler acquired any title in consideration of the marriage depends upon facts doubtful in their character ; there can be little doubt he claimed title by virtue of the bill of sale to his wife only. But one simple and undisputed fact exists in the cause, to wit: that Kegler took possession of the slave as his own, and held her as such, adversely to all others, for more than three years, before he conveyed to his children. That the Act of Limitations gave him a good title to defend himself, and barred the remedy of all others, is certain; but did it vest in Kegler an absolute title, which he could assert as plaintiff? is the question. It is contended that the remedy of Hartwell Miles was barred, but the right remained: consequently, if he got possession of the slave peaceably by recaption, the right and possession were again united, of which he, or those claiming under him, could not be deprived by Kegler, to whom the Statute gave the-power of resistance, as a defendant, vesting no right that could be asserted as plaintiff; that the Statute alone operated upon the remedy, without touching the right.
[428] Such are the reasonings upon the Statute, when applied to debtor and creditor in the English and American courts. That a claim *705 barred by time is a good consideration for a new promise, is settled beyond controversy. Clementson v. Williams, 8 Cra. 72, 74; 3 Munf. 181, 197; Bell v. Rolandson, Hardin’s Rep. 301.
Does the same rule apply to the slave property of the slaveholding States ? In the application of the Statute to this description of property, the American courts of necessity must fix rules of their own ; it is peculiar in its character, and English jurisprudence furnishes no precedents that can materially aid us.
The slave passes by deed, and is not regularly assets in the hands of the administrator; all the other goods must first be exhausted, and then the County Court will order the sale of the slaves. Our laws and those of Virginia, equally in force in Kentucky, in these respects are the same in substance. Were the doctrines contended for by the counsel for the plaintiff in error the true ones, this consequence would follow: A gets possession of B’s female slave, say in Virginia, brings her here, sells her to an innocent purchaser, who keeps her ten or twenty years; she then- has increase; the right of the mother is in the Virginia claimant, the increase follow of course the original right; before the child is three years old the original claimant sues for and recovers it, — did the woman have ten children all would be recovered in the same manner. The use of the mother would be in one man, the right unbarred to the increase in another.
The next consequence is, that A holds a slave three years, and the remedy is barred as to him, but the Statute communicates no right; he then sells to B, who cannot avail himself of the bar formed by the Statute in favor of the first possessor, and the latter can be sued at any time within three years after his possession is acquired. Such is the doctrine declared by Judge Haywood, in Blanton v. Coulson, 3 Hay. Rep. 155, 156. It is also declared that no property is acquired by three years’ possession; the remedy by action is barred, but the right of recaption exists.
[429] Ho such question was involved in that cause, and the suggestions made by Judge Haywood were used as an argument to prove that a want of knowledge in the plaintiff where his property was until within three- years before action brought, would be a good replication to the Statute of Limitations. The cause was again brought before the Supreme Court at Sparta, in 1825, and was adjudged for the defendant, because the replication that plaintiff did not know where his property was, &c. was holden bad, and the suggestions reported in 3 Haywood were overruled. This decision was in accordance with that of McGinnis v. Jack and Cocke, made at Knoxville in 1825. Ante, 361. Nothing could be imagined much more dangerous to the repose of society, than the recognition of the principle, that although the remedy was barred, the right of recaption existed, in cases of dormant claims to slaves. That this mode of assorting the claim would result in personal violence of the most dangerous character is *706 certain. No authority is found giving sanction to such an idea. The. better opinion is, that when the right exists unbarred, and the true owner, by violence or by a tortious and unlawful act obtains possession of the slave, he shall not be permitted to set up his better title, when sued by him, who was tortiously deprived of the possession. To do so, would be to permit the defendant to take advantage of his own wrong. 3 Hen. & Munf. 61; 2 Tenn. Rep. 98; 1 Hay. Rep. 13; Act of 1779, ch. 11; 1799, ch. 28; slaves having mind, the rule laid down in 3 Bla. Com. 4, must be most cautiously applied.
He who holds possession of land peaceably for seven years by virtue of a grant or deed acquires a right of soil, and if turned out of possession may regain it by the action of ejectment. Does the same rule hold in reference to slaves when the remedy of the owner is barred by three years’ adverse possession ? So we hold, and that three years’ possession of the slave in question, acquired without fraud or force, gave to David Kegler a legal title, to her, and that the plaintiff ought to recover in this action. We feel it our duty, as also our inclination, to follow the decisions of sister States where slavery exists. Such has been the course of [430] decision in Virginia. Newby v. Blakey, 3 Hen. & Munf. 56-66. In the Supreme Court of the United States, Brent v. Chapman, 5 Cran. Rep. 358, followed in Guy v. Sheby, 11 Wheat. 571; and of Kentucky, in Thompson v. Caldwell, 3 Littel, R. 136.
The judgment of the Circuit Court must therefore be affirmed.
Norn. — The expression of the learned judge who delivers the opinion of the Court in this case, that “the better opinion is, that when the right exists unbarred, and the true owner, by violence or by a tortious and unlawful act, obtains possession of the property, he shall not be permitted to set up his-better title, when sued by him who was tortiously deprived of the possession,” is treated as a dictum, and overruled in Neely v. Lyon, 10 Y. 473, 475. The same conclusion as in Neely v, Lyon is arrived at in Collomb v. Taylor, 9 Hum. 689, 702, but without referring to that case. —Ed.